**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. 1:23-CIV-21705

| | | |
|---|---|---|
| PRO ENERGY, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-21705 |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF PRO ENERGY, LLC'S OPPOSITION
TO THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

**Table of Contents**

I.   The Letter of Revocation is Invalid and Must be Set Aside ...........................- 3 -

    A.   The United States Fails to Address the Service's Failure to Mail the Letter of Revocation .......................................................- 3 -

    B.   The United States Raises a New Basis to Support the Letter of Revocation that it Failed to Disclosure in Discovery ...............- 3 -

II.   The Treasury Regulations are Invalid, and Pro Energy is Not  Precluded from Challenging Them ...............................................................- 6 -

    A.   The Service Determined the Treasury Regulations are Interpretive, and It Should be Bound by that Determination .......- 6 -

    B.   Variance Doctrine .....................................................................- 8 -

    C.   Section 2401 ..............................................................................- 9 -

    D.   The United States Ignores the Precedential *Hewitt* Case ...........- 10 -

    E.   The United States Fails to Show that the "Substantial Compliance" Doctrine Would Not Apply ..................................- 10 -

III.  Pro Energy Has Not Passed on the Tax to Its Customers ...........................- 11 -

Predictably, the United States' opposition attempts to raise more procedural technicalities as barriers to Pro Energy's refund claim.  It now seeks to use the "variance doctrine" and 28 U.S.C. § 2401 as shields to prevent Pro Energy from responding to the exemption certificate issues it first raised late in this case and that Pro Energy had no prior opportunity to address.  It also attempts to justify the Letter of Revocation on grounds it failed to disclosure in discovery.  Moreover, as to the exemption certificates, the Tax Division continues on its course of singling out Pro Energy for different treatment than every other taxpayer in the state contrary to Eleventh Circuit precedent.  *Powell v. United States*, 945 F.2d 374 (11th Cir. 1991) (stating "the IRS is not allowed to treat two similarly situated taxpayers differently" and finding validly stated claim for administrative inconsistency); *Romano-Murphy v. Commissioner*, 816 F.3d 707, 720 (11th Cir. 2016).

**I.      The Letter of Revocation is Invalid and Must be Set Aside**

**A.      The United States Fails to Address the Service's Failure to Mail the Letter of Revocation**

First, we note what the United States does not discuss in its motion, and that is the effect of the Service's failure to mail the Letter of Revocation to Pro Energy. Pro Energy noted this as an issue on the first page of its motion and in its statement of facts.  Nevertheless, the United States does not address how, regardless of all the other shortcomings, the Letter of Revocation could be effective and enforced against Pro Energy if the company did not receive it. [ECF No. 40, at ¶9, fn.3; ECF No. 43, at pg. 2.]  This factual issue clearly precludes summary judgment in favor of the United States.

**B.      The United States Raises a New Basis to Support the Letter of Revocation that it Failed to Disclosure in Discovery**

As Pro Energy pointed out in its original motion, it asked the United States in discovery how the Letter of Revocation could possibly be valid in light of the Treasury regulation's effective date provision, and the United States only gave a

nonsensical discovery response.  [ECF No. 43, pg. 9.]  In Pro Energy's opposition, it correctly foreshadowed that the United States would ultimately raise grounds that it failed to disclose in discovery when asked.  [ECF No. 50, pg. 8.]  That turned out to be precisely the case, as the Government's opposition abandons its prior explanation and now assets two new bases – one founded in case law, and the second being so-called harmless error.  [ECF No. 48, pgs. 3-5.]  The Court should preclude the United States raising these new arguments.  Fed. R. Civ. Pro. 37(c)(1); *Cayago Americas, Inc. v. Heinen*, 2022 WL 2806530 at *4 (S.D. Fla. 2022).  It is not fair to allow the United States to conceal these grounds until its opposition brief, precluding Pro Energy from being able to conduct discovery on them and only have seven days to consider them before addressing in the limited space afforded in its reply brief.

As to the merits, the cases cited by the United States are inapposite.  [ECF No. 48, pg. 3.]  They address the computation of statute of limitations in various contexts, and whether that runs from the date printed on the notice or from the date of mailing.  None addresses the Service's violation of a regulation specifically precluding the Service from making a final agency action retroactive, and none deal with the Treasury regulations at issue in this case.  Importantly, none transform the effective date of the revocation from the October 6th date stated in the letter to any other date.

Next, the Government attempts to characterize the Service's blatant violation of the Treasury regulation as harmless error. [ECF No. 48, pgs. 4-5.]  It explains that in the approximately thirty years since the regulation was instituted, the Service has not programmed its computer system to ensure compliance with it.  In providing this justification, the United States goes outside of the administrative record where it had previously urged the Court not to do so.  [ECF No. 42, pg. 4.]  Also, the United States declares with bemusement that Pro Energy never tried to appeal the Letter of Revocation.  [ECF No. 48, pg. 5.]  Of course Pro Energy did not make an appeal, it never received the letter – a fact the United States again does not acknowledge.

As Pro Energy has previously described, its existing UV registration was never at issue in the proceeding – only its application for an M registration. [ECF No. 50, at pgs. 4-6.] There was no notice to Pro Energy that its UV registration was at issue, and no opportunity to address any specific issue with respect to it. [Id.] The Service's actions in revoking Pro Energy's UV registration therefore did not comport with the requirements of the Due Process Clause as described in the cases that Pro Energy previously cited. [ECF No. 50, pg. 5.] Moreover, the denial of the right to be heard is a violation of due process that can never be harmless error. *Romano-Murphy*, 816 F.3d at 720 (citing *Republic Nat'l Bank of Dallas v. Crippen*, 224 F.2d 565, 566 (5th Cir. 1955)).

While courts have applied the harmless error test in some instances, they have also recognized agencies must comply with procedural requirements, cannot rest on the harmless error doctrine and cautioned against presuming a lack of prejudice. *Ramano-Murphy*, 816 F.3d at 720. Here, the setting of the revocation date was the process and was the determination, and failing to follow the regulation was prejudicial. Other courts have taken a harder line about agencies following their own procedures. *Simmons v. Block*, 782 F.2d 1545, 1550 (11th Cir. 1986); *Arial Banners, Inc. v. F.A.A.*, 547 F.3d 1257, 1260 (11th Cir. 2008).

**C.    The United States Admits that the Letter of Revocation Failed to Apply the Correct Registration Tests**

Next, the United States asks the Court to ignore the two inapplicable registration tests that the Service cited in the Letter of Revocation and nevertheless conclude that its reference to the activity test and a failure to provide SSN/EINs is sufficient. [ECF No. 48, pgs. 5-6.] Pro Energy already addressed this in its opposition – describing that the Service failed to make any connection between the SSNs and the activity test (or either of the two other inapplicable tests. [ECF No. 50, pgs. 4-6, 13-14.]

Moreover, the Service never notified Pro Energy that its UV registration at was at issue, the letter that requested the SSNs only referenced the M registration application, the Service failed to consider information about the SSNs already in its possession, and RA Terron who conducted the M registration review never requested the SSNs or considered this as a basis when he decided to revoke Pro Energy's UV registration. [ECF No. 50, pgs. 4-5, 3-14, 16-17.] The United States' arguments are therefore more attempts to make a connection and decern a rationalization after-the-fact that the Service did not make as part of its decision to revoke Pro Energy's UV registration. That revocation is therefore invalid and must be set aside.

## II.     The Treasury Regulations are Invalid, and Pro Energy is Not Precluded from Challenging Them

### A.     The Service Determined the Treasury Regulations are Interpretive, and It Should be Bound by that Determination

First, before passing on the validity of the Treasury regulations, the Court can determine that they are interpretive and, under *Loper* Bright, not entitled to any deference. The United States argues that the Treasury regulations are not interpretive, but instead were promulgated pursuant to § 6427(n), and therefore that *Loper Bright* does not apply. [ECF No. 48, pg. 9.] This is again more after-the-fact revisionism. When Treasury promulgated the regulations, it clearly stated that they were interpretive regulations. In the final diesel regulations (i.e., Treas. Reg. § 48.6427-9), Treasury included a section titled "Special Analyses," in which it "determined that section 553(b) of the Administrative Procedure Act … [does] not apply to these regulations." [ECF No. 40-36, Ex. 408, *Gasoline and Diesel Fuel Excise Registration Requirements, 61 Fed. Reg. 10451-2 (March 14, 1996),* pg. 10452, Special Analyses.] Similarly, in the final gasoline regulations, (i.e., Treas. Reg. § 48.6416(b)(2)-3), Treasury included the same statement that section 553(b) does not apply. That is, Treasury concluded that 5 U.S.C. § 553(b) does not apply to the regulations.

There are three instances in which 5 U.S.C. § 553(b) does not apply.  First, if the persons subject to the rule are named and personally served or have actual notice.  *Id*.  Second, if the regulation is an interpretive rule.  *Id*.  Third, if the agency finds for good cause that notice and public procedure are "impracticable, unnecessary, or contrary to the public interest."  *Id*.  It is clear the first and third exceptions do not apply.  The final rule does not name any specific persons affected by the rule, let alone evidence that they were personally served, and the regulations do not make any finding for good cause that notice and comment should not apply.  That leaves only the second exception – that the regulations are interpretive.  While Treasury could have proceeded under 26 U.S.C. § 6427(n), it chose instead to make interpretive regulations that were not subject to notice and comment rulemaking.  Treasury made its decision, and the Court should not permit the United States to recase the regulations as under § 6427(n) just to obtain a benefit in this litigation.

As this Court has described, interpretive rules reflect an agency's construction of a statute that it has been entrusted to administer but without modifying the statute itself.  *Florida v. Cardona*, 2024 WL 4370879 at *18 (S.D. Fla. October 2, 2024).  Put another way, an interpretive rule draws linguistically from the language of the statute, but it does not create new laws, rights or duties that are not found within the statute itself.  *Id*. In this case, Treasury declared that the diesel and gasoline regulations were interpretive, but it proceeded to impose exception certificate requirements and content that have no connection to the corresponding statutes.  It went far beyond what is permissible for an interpretive regulation.  The result is that these are not valid "interpretations" of the statutes and are not entitled to any deference from this Court under *Loper Bright*.  Therefore, there is no requirement for exemption certificates nor the content of the certificates, and the regulations are no impediment to Pro Energy's refund claim.

### B.    Variance Doctrine

If the Court finds the regulations are not interpretive, then neither the variance doctrine nor Section 2401 preclude Pro Energy from challenging the validity of them.  To be clear RA Terron reviewed and approved Pro Energy's use of the Florida state sales tax certificates on multiple occasions.  The Tax Division on its own accord raised an issue about the exemption certificates at the eleventh hour, necessitating an extension of the case schedule so that Pro Energy could conduct at least some discovery on this point.  [ECF No. 37, ¶4, - "the United States identified another potential basis … that had not previously been conveyed to Pro Energy during the discovery process."]

A claim is sufficient under the variance doctrine if the basic issue and the facts upon which the claim is predicated are evident from the record, and "this is not a stringent standard."  *IA 80 Group, Inc. v. United States*, 347 F.3d 1067, 1074 (8th Cir. 2003).  Courts have not allowed the Government to use the variance doctrine to prevent taxpayers from responding to its litigating positions.  *Brown v. United States*, 427 F.2d 57, 62 (9th Cir. 1970) ("It would be unfair to allow the Government to assert a new defense to a taxpayer's claim at pretrial and simultaneously to prevent the taxpayer from making appropriate responses to it, because the taxpayer had not previously anticipated the defense."); *El Paso CGP Co, LLC v. United States*, 748 F.3d 225, 229 (5th Cir. 2014); *Shore v. United States*, 26 Cl.Ct. 826, 828 (1992).

In this case, the facts are apparent from Pro Energy's refund claims, which list the governmental entities to which Pro Energy made the exempt sales and the types and amounts of fuel purchased.  [ECF Nos. 1-5, 1-6, 1-7, & 1-8.]  The variance doctrine therefore does not preclude Pro Energy from responding to this issue raised by the Government in this case, including challenging the validity of the Treasury regulations.

## C.     Section 2401

In addition to the variance doctrine, the United States asserts 28 U.S.C. 2401 as another bar to Pro Energy's challenge against the regulations, arguing that Pro Energy was injured by the regulation either in 1996 when it was issued for in 2006 when Pro Energy received its UV registration, and therefore the six-year period for challenging the regulation has passed.  [ECF No. 48, pgs. 11-12.]

The response to this is simple – during the entire time from 2006 through 2024, the entire fuel sales industry in Florida has used the Florida states sales tax certificates to document tax-exempt sales.  The Service has reviewed and accepted the use of those certificates.  During this time, Pro Energy was not injured by the regulation.  It would not have had Article III standing to go to court and make a challenge against the regulation because the Service accepted the Florida states sales tax certificates and never denied its refund claims.  *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799, 804 (2024) ("A claim accrues when the plaintiff has the right to asset it in court – and in the case of the APA, that is when the plaintiff is injured by a final agency action"); *Linney's Pizza, LLC v. Board of Governors of the Federal Reserve System*, 2024 WL 4129195 at *1 ("The Supreme Court held in *Corner Post* that the six-year statute of limitations in 28 U.S.C. § 2401(a) begins to run on the date of injury, not when the challenged regulation issues.")

Pro Energy was injured in approximately September 2024 when the Tax Division singled Pro Energy out for disparate treatment and attempted to enforce the Treasury regulations differently against Pro Energy than the way in which the Service (i.e., the agency responsible for administering the regulations) enforces them.  Thus, Pro Energy is well within the time for challenging the regulations, and Section 2401 is no impediment.

### D.       The United States Ignores the Precedential *Hewitt* Case

If the Court determines that the regulations are not interpretive, then it would need to pass on their validity.  In its opening brief, Pro Energy described how the Eleventh Circuit recently invalidated another Treasury regulation in *Hewitt v. Commissioner*, 21 F.4th 1336 (11th Cir. 2021) for precisely the same shortcomings that are present in the diesel and gasoline regulations at issue in this case, i.e., a failure to address a multitude of significant comments.  [ECF No. 43, pgs. 16-20.]

While the United States attempts a response, its discussion does not cite *Hewitt* at all, let alone offer any explanation why the Eleventh Circuit would possibly reach any different result in this case.  [ECF No. 48, pgs. 14-17.]  It goes on to cite mostly cases from other circuits and an earlier Eleventh Circuit to support its argument that Treasury's two-page summary of comments sufficiently addressed the nearly 1600 pages of comments it received from 336 commentors.  But its failure to cite or discuss *Hewitt* is telling and illustrates that there is no valid reason why the result in this case should be any different.[1]

### E.       The United States Fails to Show that the "Substantial Compliance" Doctrine Would Not Apply

Finally, if the Court determines that the regulations are not interpretive and are valid, then it may need to decide whether Pro Energy substantially complied with the exemption certificate requirements.  Pro Energy has already discussed this extensively.  [ECF No. 43, pgs. 14-16; ECF No. 50, pgs. 19-20.]

---

[1] In its opposition, the United States now identifies specific comments and attempts to explain how Treasury's cursory summary was sufficient.  [ECF No. 48, pgs. 15-17.]  Nothing in *Hewitt* (or the APA for that matter) supports this approach.  Indeed, the APA requires the agency to sufficiently address the comments in the final regulation so as to allow judicial review.  *Hewitt*, 21 F.4th at 1342.  It does not allow an after-the-fact rationalization.  And it is not surprising Treasury failed to address these comments in light of its determination the regulation was interpretive and not subject to notice and comment rulemaking.

The United States alleges that the substantial compliance doctrine does not apply because the essence of the regulations is to verify the tax-exempt nature of the sales. [ECF No. 48, pg. 18.] But the substantial compliance doctrine is focused on the essential statutory purposes – i.e., why did Congress write the law, not why the IRS wrote the corresponding regulation. [ECF No. 50, pgs. 14-16.] In this case, Congress passed the statutes to allow tax-exempt local governments. That was the essential purpose. The statutes say nothing about exemption certificates and verification of sales, which is a creation of the regulations. 26 U.S.C. §§ 6427, 6416; *cf.* Treas. Reg. § 48.6427-9, 48.6416(b)(2)-3. Pro Energy fulfilled the statutory purpose by obtaining exemption certificates to show that it made tax-exempt sales. When the certificates expire, or whether other information about the sale is contained in the certificate themselves or the other contemporaneous business records that Pro Energy keeps for each sale is merely procedural. [ECF No. 43-3, Ex. 210, Pro Energy 007074-81; ECF No. 43-4, Ex. 211, Pro Energy 007000-73; ECF 49-10, pgs. 2-4.] Indeed, the regulation itself makes clear that the certificate is to be viewed together with the ultimate vendor's other records of the sale. Treas. Reg. § 48.6427-9(e)(2)(i) ("The certificate may be included as part of any business records normally used to document a sale.") The substantial compliance doctrine applies in this case.

## III.  Pro Energy Has Not Passed on the Tax to Its Customers

Finally, the United States asserts a new ground in opposition to Pro Energy's refund claim that it did not previously raise in its motion for summary judgment – namely that Pro Energy has not demonstrated that it has not passed the federal fuel taxes onto its customers. [ECF No. 48, pg. 20.] Notably, the United States offers no evidence whatsoever to support this offensive assertion that Mr. Cruz and Pro Energy have been defrauding the Government and their clients by passing on these taxes but nevertheless claiming refunds. The evidence is clear they did not.

First, when asked at his deposition, Mr. Cruz testified that the company did not pass the federal fuel taxes on to its customers. [Ex. 352, 61:6 to 64:18.] Second, RA Terron and DOJ Attorney Daniel Causey visited Pro Energy's offices together during the course of this case to review whatever of the pallets of documents they wanted, including sales transaction documents for all of the sales at issue in this case. [ECF 40, Ex. 353, *RA Terron* Deposition, 67:1-11, 67:23-25; ECF 49, Ex. 410.] Despite this review of all the transaction documentation, the United States is unable to cite to a single piece of evidence to support its baseless assertion that Pro Energy passed on the federal fuel taxes to its governmental clients.

Third, Pro Energy has previously submitted sample transaction documents for fuel sales, and these make clear that various taxes are being passed on to their customers, but that the federal fuel taxes are not one of them. [ECF No. 43-3, Ex. 210, Pro Energy 007074-81; ECF No. 43-4, Ex. 211, at Pro Energy 007000-73.] And as if this point needs to be made any more emphatically, Pro Energy is attaching a sample invoice from a sale to a non-tax-exempt client, which reflects that the federal fuel tax is being passed on to that client. [Ex. 411, *Pro Energy Sample Invoices*, pg. 2.]

The undisputed evidence is that Pro Energy does not pass on these taxes to its customers. The United States cannot oppose summary judgment by making the mere allegation, without any support. In order to oppose summary judgment on this ground, the United States must "present competition evidence" designating specific facts showing there is a genuine issue for trial. *American Airlines v. Spada*, 2024 WL 4472016 at *5 (S.D. Fla. Sept. 21, 2024). Here, the United States makes an offensive and completely unsupported allegation. This is therefore no basis for opposing Pro Energy's refund claim.

Dated: January 16, 2025         Respectfully submitted,

/s/ Brian R. Harris
Fla. Bar No. 512001
Fogarty Mueller Harris, PLLC
501 E Kennedy Blvd, Ste 1030
Tampa, FL 33602-5227
Phone: (813) 682-1720
Fax: (813) 682-1721
brian@fmhlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by notice of electronic filing on January 16, 2025, on all counsel on the Service List below.

Christopher Merino
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
Christopher.Merino@usdoj.gov

Daniel B. Causey, IV
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
Daniel.B.Causey@usdoj.gov

/s/ Brian R. Harris
Fla. Bar No. 512001