UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No.: 23-cv-21705-JB**

PRO ENERGY LLC,

       Plaintiff,

v.

UNITED STATES OF AMERICA,

       Defendant.

_____/

## OMNIBUS ORDER ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Defendant United States of America's Motion for Summary Judgment ("Government's Motion"), ECF No. [42], and accompanying Statement of Material Facts, ECF No. [41], and Plaintiff, Pro Energy LLC's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. [43], and accompanying Statement of Material Facts, ECF No. [40]. Plaintiff filed a Response in Opposition to the Government's Motion, ECF No. [50], and a Response to the Government's Statement of Material Facts, ECF No. [49], to which Defendant replied. ECF Nos. [51], [52]. Defendant also responded to Plaintiff's Motion, ECF No. [48], and to Plaintiff's Statement of Material Facts, ECF No. [47], to which Plaintiff replied. ECF Nos. [53], [54]. The Court held oral argument on the Motion (the "Oral Argument"), ECF No. [66].

On September 17, 2025, the Government filed a Notice of Supplemental Authority, ECF No. [67]. The Court ordered Plaintiff to respond to the Notice, and

1

stayed consideration of the Motion pending such response. ECF No. [68]. Plaintiff has now filed its response. ECF No. [69].

Upon review of the Motions, the arguments of the parties, the pertinent portions of the record, and the relevant authorities, and for the reasons stated below, it is hereby **ORDERED AND ADJUDGED** that the Government's Motion is **DENIED**, and Plaintiff's Motion is **GRANTED**.

## I.        FACTUAL BACKGROUND

The Internal Revenue Code ("IRC") allows certain taxpayers to recover federal excise taxes paid for diesel and gasoline fuel sold to customers that are tax-exempt. *See* 26 U.S.C. §§ 6416, 6427; *see also* ECF No. [42] at 1; ECF No. [43] at 5. The scheme, at its core, is simple. Fuel distributors buy fuel in large quantities and pay the corresponding tax at the time of purchase. When a fuel distributor sells fuel to a tax-exempt entity, the fuel distributor can file a form 8849 for a refund of the tax they paid when they purchased the fuel. *See* ECF No. [42] at 2; *see also* Pl. Statement of Material Facts ("Plaintiff's SOMF" or "ECF No. [43]"), ECF No. [43] at 2. To request and receive the refund, the fuel distributor must be registered as an "ultimate vendor" ("UV") and must procure and maintain proper and unexpired exemption certificates ("Exemption Certificates") verifying that the purchaser meets the requirements for the sale to be tax free (i.e., that the purchaser is, indeed, a tax-exempt entity). *See id.*; *see also* Treas. Reg. § 48.6416(b)(2)-3(b)(1)(i) and (ii) (for gasoline sales); Treas. Reg. § 48.6427-9(e)(2) (for sales of diesel fuel).

2

Plaintiff is a fuel distributor based in Florida that provides energy and fuel-related services. ECF No. [40] ¶2; ECF No. [47] ¶2. Plaintiff first applied and registered with the IRS as an UV in 2006. ECF No. [40] ¶6; ECF No. [47] ¶6. Although the parties do not dispute that Plaintiff was regularly engaged in the characteristic activity of an UV, ECF No. [40] ¶15; ECF No. [47] ¶15, they do dispute whether its UV registration for certain tax periods was valid after the IRS cancelled Plaintiff's UV registration due to Plaintiff's failure to communicate with the IRS.

The IRS cancelled Plaintiff's UV status in connection with Plaintiff's application for a different IRS license. On January 10, 2020, Plaintiff applied for an "M" registration ("M Registration"), which would have allowed Plaintiff to blend certain fuels for sale. ECF No. [40] ¶7; ECF No. [47] ¶6. According to the IRS' Case Level Activity Record, on February 19, 2020, the IRS conducted an initial review of the M Registration application, and called Chas Defelice, the designated representative of Pro Energy, to follow up on the application. *See generally,* ECF No. [39], (the "Administrative Record"); ECF No. [39-8] at 1. According to the IRS' call log, Mr. Defelice was out of the country when the IRS called but would be back the following week. *Id.* The log indicates the IRS representative called Mr. Defelice again on February 26, 2020, did not reach him, but left a message. *Id.* Again, on March 5, 2020, the IRS representative called Mr. Defelice, and was told to call back on Monday, March 9, 2020. *Id.* The call log notes that the IRS representative indicated that he would send a letter. *Id.*

3

Plaintiff denied having received any letter from the IRS in connection with their request for information. *See* ECF No. [40] ¶10; ECF No. [47] ¶10. On April 7, 2020, the IRS call log entry read as follows:

> 4/7-Out of the office from 3/09 – 4/6. Out of the office from 3/11-4/6. As of today no[ ] response for applicant. Pull Current IDRA they are not in compliance 2290/ 201107 – 201707 has not filed. Deny this application the Applicant failed to provide[ ] additional Information from the L 3682 sent on 3/5. Deny, application not in compliance.

ECF No. [39-8] at 1. Despite this conclusion from the IRS representative, the application was given to another IRS representative, William Javier Terron, on April 10, 2020. *See id.* (entry on April 10, 2020, indicating "New Application assigned to W. Terron."). The first entry in Mr. Terron's Examining Officer's Activity Record states that the IRS was now requesting that Plaintiff's other tax filings be verified. *See* ECF No. [39-9] at 1. On April 29, 2020, Mr. Terron's log indicates that he contacted Plaintiff and left a message requesting to schedule an interview. *See id.* Plaintiff returned the call and scheduled an interview for May 26, 2020. *See id.*

On May 26, 2020, Plaintiff requested that the appointment be rescheduled for another day, noting that it was "the first day for all employees to be back in the office and they were really busy and disorganized . . . ."[1] *Id.* The parties rescheduled for May 28, 2020. *See id.* On May 28, 2020, Plaintiff explained that they were having system issues, and asked to reschedule again. *Id.* According to the Examining Officer's Activity Record, Mr. Terron indicated to Plaintiff that this would be their "last chance"; that Mr. Terron would "not accommodate them anymore and will move

---

[1] Plaintiff's office had apparently been closed due to the COVID-19 pandemic.

the case to closure denying the new application and revoking the one they have." *Id.* Mr. Terron indicates in his log that he contacted Plaintiff on June 29, 2020, July 7, 2020, and July 30, 2020, in attempts to follow up with Plaintiff to determine whether they would withdraw the application for the M Registration or reschedule the appointment. *See id.* at 2.

On August 11, 2020, the examining officers recommended that the IRS deny the M Registration application and revoke Plaintiff's UV status on the grounds that Plaintiff was "not communicating with [the IRS]." *Id.* On August 31, 2020, the log indicates that Mr. Terron called Plaintiff's office and left a voicemail message explaining that if they do not return the call within five business days, they will be denied the M Registration and revoke "the one that they already have," a reference the Government contents was to Plaintiff's existing UV registration. *Id.* at 2. On September 19, 2020, Mr. Terron's log ends by indicating that Plaintiff has not responded to any of the IRS communications, that they did respond at first but then "all [of a] sudden [Plaintiff] stops all communications." *Id.* The case was then forwarded for final closure. *Id.* On September 29, 2020, Mr. Daryl M. Gilliam reviewed the file and concurred with the decision to deny Plaintiff's M Registration and revoke Plaintiff's UV registration. On October 6, 2020, the IRS revoked Plaintiff's UV status.

On October 16, 2020, the IRS claims it mailed Plaintiff a letter explaining that Plaintiff's application for M registration was denied, and that Plaintiff's UV

registration had been revoked.  ECF No. [41] ¶33; ECF No. [47] ¶¶8–9.  The pertinent portions of the letter read as follows:

> You failed to respond and/or provide information required to establish you meet the Activity, Adequate Security and Acceptable Risk Registration Tests as outlined in Treasury Regulation 48.4101. This includes names and SSN/EIN of all officers, related entities, partners, etc. Therefore, your Form 637 "UV" Activity Letter has been revoked.

ECF No. [39-7], ECF No. [41] ¶33; ECF No. [47] ¶¶11–12.  Despite the language in the letter, it is undisputed that only the Activity Test and the "satisfactory tax" portion of the Adequate Security Test are required for UV registrations.  ECF No. [40] ¶¶13–14; ECF No. [47] ¶¶13–14.  Plaintiff disputes that it received this letter.

Between 2021 and 2022, Plaintiff filed quarterly claims for a refund of excise taxes by submitting Form 8849 for the following periods: (i) July 1, 2021 to September 30, 2021 ("Q3 2021"); (ii) October 1, 2021 to December 31, 2021 ("Q4 2021"); (iii) April 1, 2022 to July 31, 2022 ("Q2 2022"); and (iv) July 1, 2022 to September 30, 2022 ("Q3 2022") (the "Quarters at Issue").  ECF No. [47] ¶¶22–26.  With each submission, as it had done before, Plaintiff included Florida state sales tax exemption certificates to document the exempt sales, also referred to as D-14 forms ("D-14 Forms").  ECF No. [47] ¶37.[2]  Notably, Plaintiff received refunds for certain of the above quarters, but not for the Quarters at Issue.  ECF No. [66] at 6:5–18.[3]

---

[2] Plaintiff has received refunds for the first two quarters of 2021, the first and fourth quarters of 2022, the first, third and fourth quarters of 2023, and the first two quarters of 2024.  ECF No. [41] ¶¶27–28; ECF No. [47]  ¶¶27–28.

[3]  On January 9, 2024, Plaintiff applied for and received a new UV registration number.  *See* ECF No. [40] ¶45; ECF No. [47] ¶45.  Mr. Terron also participated in the review of this application.  ECF No. [40] ¶33; ECF No. [47] ¶33.

According to Plaintiff, it first learned that its UV registration was revoked when it failed to receive refunds for the Quarters at Issue. *See* ECF No. [66] at 5:23–6:4. Plaintiff reached out to the Taxpayer Advocate Service and then-Senator Marco Rubio's office to find out why they were not being paid for the Quarters at Issue, and discovered that their UV registration had been revoked. *Id.* at 6:1–4. Plaintiff promptly reapplied for the UV registration and, using the same D-14 certificates as before, was approved with a new UV registration on January 24, 2024. *Id.* at 7:2–19.

## II.    THE INSTANT MOTIONS

Plaintiff filed a single count Complaint on May 5, 2023, for a refund of taxes under 26 U.S.C. § 7422. The parties have now cross-moved for summary judgment. Defendant argues that the Court should grant summary judgment in the Government's favor because (1) Plaintiff is not entitled to the refund because it lacked a UV registration for the Quarters at Issue; and that in any event, (2) Plaintiff failed to maintain regulatory compliant Exemption Certificates from its tax-exempt buyers. First, the Government argues that Plaintiff lacked a UV registration for the Quarters at Issue because Plaintiff's UV registration had been properly revoked in October 2020 for Plaintiff's failure to respond to IRS communications. *See* ECF No. [42] at 3–14. The Government also argues that notwithstanding its UV certification, Plaintiff is not entitled to the refund for the Quarters at Issue because: (i) Plaintiff failed to maintain the required Exemption Certificates, and (ii) Plaintiff cannot rely on the D-

14 forms because they do not comply with the substantive requirements of the Exemption Certificates for gasoline and diesel fuel sales. *See* ECF No. [42] at 15–20.

Plaintiff argues that the Court should grant summary judgment in its favor because the revocation of Plaintiff's UV registration was arbitrary and capricious given that: (1) there is insufficient evidence to demonstrate that the letter was mailed to Pro Energy, (2) the IRS violated its own regulations when it post-marked the revocation letter as of October 16, 2020, but included the effective date as of October 6, 2020, and (3) the basis on which the IRS revoked Plaintiff's UV status violated its own regulations because it listed an incorrect standard for UV registrations.[4] *See* ECF No. [43]. In response to Defendant's alternative argument, Plaintiff argues that the regulation requiring Exemption Certificates are not entitled to deference under *Loper Bright*, and do not bar Pro Energy's refund claim because it is common practice for tax-payers in Florida to use the D-14 forms provided in place of the relevant Exemption Certificates, and that such forms substantially comply with the regulation. *See* ECF No. [40] ¶¶36–37; ECF No. [43] at 14–16. Plaintiff also argues that the regulation requiring Exemption Certificates is invalid for its failure to adhere to the notice and comment rulemaking procedure set forth in the Administrative Procedure Act ("APA"). *See* ECF No. [43] at 16.

---

[4] Plaintiff also challenges the validity of the regulation that requires the exemption certificates under the Administrative Procedure Act.

## III.     LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact is one with "'a real basis in the record,'" such that "a reasonable jury could return a verdict for the nonmoving party." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *Cordoba v. Dillards*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The movant must support its assertion that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A).  To determine whether the movant satisfied this burden, courts view the movant's evidence and all factual inferences arising therefrom in the light most favorable to the non-movant. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999)).  As to issues on which the non-moving party would bear the burden of proof at trial, it is sufficient for the movant to

9

highlight a failure of proof concerning an essential element of the non-movant's case. *Celotex*, 477 U.S. at 322–23.

Once the movant carries its burden, the non-movant must offer specific evidence showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). If the record, taken as a whole, could not lead a rational trier of fact to find for the non-movant, there is no genuine issue for trial, and summary judgment is proper. *Matsushita*, 475 U.S. at 587.

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party filed a motion" *Torres v. Rock River Food Inc.*, 244 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016) (citing *Am. Bankers Inc. Grp. V. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). The Court reviews each individual motion on its own merits, taking the facts on each motion in the light most favorable to the respective nonmovant. *See Adega v. State Farm Fire & Cas. Ins. Co.*, No. 07-cv-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009). Cross-motions for summary judgment do not, in themselves, warrant a court in granting summary judgment "unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Purcell v. City of Fort Lauderdale*, 753 F. Supp. 3d 1308, 1324 (S.D. Fla. 2024) (quoting *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984)).

10

IV.     ANALYSIS

A. **The Revocation of Plaintiff's UV Status Was Arbitrary and Capricious.**

This Court reviews the agency's decision to revoke Plaintiff's UV status for "abuse of discretion" and may set aside such decision if it is found to be "arbitrary, capricious, or an abuse of discretion[.]" 5 U.S.C. § 706(2)(A). Under this review, a court is not generally empowered to conduct a *de novo* review of the matter but must review the agency's decision based on the record the agency presents to the reviewing court. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) (citing to *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).[5]

Section 48.4101-1 of the Treasury Regulations allows the IRS to revoke or suspend the UV registration of any registrant "if the district director determines that the registrant, at any time . . . does not meet one or more of the applicable registration tests under paragraph (f) of this section and has not corrected the deficiency within a reasonable period of time after notification by the district director." Treas. Reg. § 48.4101-1(i)(1)(i). The same section also states that if the IRS revokes or suspends a UV registration, it "must notify the registrant in writing and state the basis for the revocation and suspension . . . [and] [t]he effective date of the revocation or suspension may not be earlier than the date on which the district director notifies the registrant." Treas. Reg. § 48.4101-1(i)(3).

---

[5] The parties do not dispute that the review of the UV revocation should be set aside only if it is "arbitrary, capricious or an abuse of discretion." *See* ECF No. [42] at 8–9, and ECF No. [43] at 7.

Defendant argues that the revocation of Plaintiff's UV registration was proper because the agency mailed a revocation letter to Plaintiff in accordance with the relevant IRC regulations. *See* ECF No. [43] at 6. Plaintiff challenges both (i) the letter itself, arguing that the letter was not mailed and did not comply with the IRC regulations such that it should be set aside as arbitrary and capricious, and (ii) the basis on which the IRS issued the revocation of its UV status. For the reasons below, although the Government has shown the letter was sent and its inaccuracies do not rise to arbitrary and capricious, the Court agrees that the revocation of Plaintiff's UV status should still be set aside as arbitrary and capricious.

### i.   The Revocation Letter Is Deemed Mailed.

First, the Court considers whether the letter advising Plaintiff of the UV revocation was mailed. In its Motion, Plaintiff argues that the letter was not mailed to Plaintiff, depriving it of fundamental due process rights of notice and opportunity to respond, and that Defendant failed to put forth sufficient evidence to meet its burden of proving that the revocation letter was mailed. ECF No. [43] at 6. Defendant argues that Plaintiff's arguments do not rebut the presumption in favor of the IRS that the letter was mailed. ECF No. [52] at 9.

The IRS bears the burden of proving, by competent and persuasive evidence, that notice was mailed. *See Belagio Fine Jewelry, Inc. v. Comm'r of Internal Revenue*, 162 T.C. 243, 246 (2024) (citing to *Lander v. Comm'r of Internal Revenue*, 154 T.C. 104, 117-118 (March 12, 2020); *Coleman v. Comm'r*, 94 T.C. 82, 90 (1990); *Magazine v. Commissioner*, 89 T.C. 321, 324 (1987); *see also August v. Comm'r*, 54 T.C. 1535,

12

1537 (1970) (detailed evidence of office procedures, which included the steps mail clerks take when reviewing the notices against the USPS form 3877s, was sufficient to meet its burden). The Eleventh Circuit has held that "the Government need only show that it mailed a notice of deficiency; it need not make any showing that a notice mailed to the taxpayer's last-known address was actually received by the taxpayer." *United States v. O'Callaghan*, 500 F. App'x. 843, 847 (11th Cir. 2012) (citing *United States v. Dixon,* 672 F. Supp. 503, 506 (M.D.Ala.1987), *aff'd,* 849 F.2d 1478 (11th Cir.1988)). Testimony regarding specific office procedures for preparing and mailing notices is sufficient to raise a presumption of a properly mailed document. *See Kerr v. McDonald's Corp.*, 427 F.3d 947, 951-52 (11th Cir. 2005). Indeed, once the Government satisfies its burden of proving compliance with its procedures for mailing, the burden then shifts to the receiving party to rebut that presumption. *O'Callaghan,* 500 F. App'x. at 848 ("In the absence of any direct evidence contradicting the Government's position, the presumption of official regularity controls.").

Defendant notes that the letter was mailed during the COVID-19 pandemic, and though office procedures had been adjusted to accommodate quarantine restrictions, the agency followed the relevant procedures for mailing letters that was appropriate for that time. *See* ECF No. [53-2] at 10–13. During her deposition, the IRS representative in charge of mailing letters, Felicia Walker, testified to the COVID-era restrictions and policies. *See* F. Walker Dep., 9:24–11:22., ECF No. [53-2]. Ms. Walker testified to how she would print, fold, and place the letters into a

windowed envelope, and take the letters to the mailroom in the building where letters are processed for posting and mailing by two mailroom employees who, as far as Ms. Walker was aware, were employed full-time despite the COVID-19 office restrictions. *Id.* She also explained that because of the COVID-19 in-office restrictions, the date of the letter would reflect the date that she was authorized to go into the office to mail the letter. *Id.*

In its Response to the Government's Motion, Plaintiff explains its process for receiving mail at length, arguing that its processes do not allow for such a letter to go unnoticed or lost. Plaintiff also contends that Ms. Walker's testimony is not enough to demonstrate that the revocation letter was mailed because it did not explain how the letter actually ends up in circulation. ECF No. [50] at 9.

In *United States v. Dixon*, the Eleventh Circuit upheld the trial court's finding that the Government's submission of a copy of the notice of deficiency addressed to the taxpayer, and the absence of any other evidence, was sufficient to demonstrate that the notice was mailed. *Dixon*, 672 F. Supp. at 506. "The presumption of regularity supports the official acts of public officers and, in the absence of *clear evidence to the contrary*, courts presume that they have properly discharged their official duties." *Id.* at 506–07 (emphasis in original). Here, the presumption of regularity has not been rebutted. Indeed, evidence of how the receiving party processes mail does not rebut the presumption that the IRS followed the IRS' mailing process. *O'Callaghan*, 500 F. App'x. at 848. Because Plaintiff offers nothing more,

14

Plaintiff has not overcome the presumption that the letter was mailed. *See Kerr*, 427 F.3d at 952.[6]

### ii.   The Discrepancies As To The Date Of The Letter Are Harmless And Do Not Invalidate The Letter.

Next, the Court considers whether the discrepancy in the letter's effective revocation date invalidates the revocation letter. The letter of revocation was dated October 16, 2020, but listed the effective date of revocation as October 6, 2020. ECF No. [39-7]. Plaintiff argues that the revocation letter should be set aside since the letter did not conform to the agency's own regulation, and that such non-conformity is, by law, "arbitrary and capricious." *See* ECF No. [43] at 8–9. Defendant argues that the date the letter was mailed is the controlling date on such notice, not the listed effective date, and that Plaintiff did not suffer any harm based on the discrepancies between the date of the letter and the effective date of the revocation listed therein, because Plaintiff did not appeal the revocation in the nine months between the mailing of the revocation letter and the filing of its Form 8849s. *See* ECF No. [39-7].

Section 4101-1(i)(3) of the Treasury Regulations state that "the effective date of the revocation or suspension may not be earlier than the date on which the district

---

[6] The Court does not take issue with Plaintiff's representation that they did not receive the letter. Indeed, when Plaintiff did not receive the regularly received refunds, Plaintiff made several inquiries to the Tax Advocate Service and to then Florida Senator Marco Rubio's office to inquire why they were not receiving the relevant refunds for the financial quarters at issue. *See* ECF No. [66] at 5:23–6:4. That said, the issue before the Court is not whether they received the letter, but whether there is sufficient evidence that it was mailed.

15

director notifies the registrant." Treas. Reg. § 4101-1(i)(3). Here, the revocation letter sent by Plaintiff contained two dates: a date at the top of the letter and an "effective date of revocation." *See* ECF No. [39-7]. According to Ms. Walker's deposition, the date of the letter reflected the date that she was authorized to go into the office to mail the letter. *See* F. Walker Dep 9:24–11:22, ECF No. [53-2]. Ms. Walker also explained that the effective date of the IRS revocation letter is automatically generated once the IRS makes the decision to revoke the registration status. *See id.*

The Court finds that the discrepancy in the dates is, at most, a procedural error that does not rise to the level of "abuse of discretion." *Ala. Hosp. Ass'n v. Beasley,* 702 F.2d 955, 958 nn. 6, 8 (11th Cir.1983) ("Under the formulation used by most courts, procedural errors are deemed harmless unless the court has a 'substantial doubt' that the agency would not have reached the result it did."). As a result, the discrepancy in dates does not rise to abuse of discretion.

### iii. Defendant's UV Revocation was Arbitrary and Capricious.

The remaining issue is whether the IRS's revocation was nevertheless arbitrary and capricious. For the reasons below, this Court finds that it was.

"An agency's decision is reasonable "so long as 'it is not arbitrary, capricious, or clearly contrary to law.'" *Cook v. Wiley*, 208 F.3d 1314, 1319 (11th Cir. 2000) (*quoting U.S. Mosaic Tile Co. v. NLRB*, 935 F.2d 1249, 1255 (11th Cir. 1991)). Courts should "set aside [an] agency action" only when it is "arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law." 5 U.S.C. § 706(2)(A).

According to the Administrative Record, ECF No. [39], the revocation of Plaintiff's UV registration was based on Plaintiff's lack of responsiveness in connection with its M registration application.  *See* ECF Nos. [39-8] and [39-9]. Indeed, on September 28, 2020, IRS representative Daryl M. Gillam notes the following:

> I have reviewed this file and concur with the decision to deny this 'M' application. The T/P has failed to respond to numerous calls and correspondence requesting information regarding the application process.

> In addition, I concur with the decision to revoke the 'UV' Registration. As above, the Registrant has not responded to numerous attempts to contact the Agent. The case will now be closed out to the 637 Team for issuance of both the Denial and Revocation Letters.

ECF No. [39-8] at 1.  That said, nothing in the record supports the UV revocation. The only rationale in the Administrative Record is Plaintiff's failure to respond to the questions the IRS was posing regarding its M registration—a registration wholly separate from the UV registration.  *See* ECF Nos. [39-7]; [39-8]; [39-9]; and [47] at 15–16.  As stated above, Section 48.4101-1 of the Treasury Regulations allows the agency to revoke or suspend the UV registration of any registrant "if the district director determines that the registrant, at any time . . . does not meet one or more of the applicable registration tests under paragraph (f) of this section and has not corrected the deficiency within a reasonable period of time after notification by the district director."  Treas. Reg. § 48.4101-1(i)(1)(i).  At any rate, nothing in the record suggests that Plaintiffs could not meet the applicable registration tests.

17

What the record shows is that the agency included the threat of canceling the UV registration to try to get Plaintiff to respond to the IRS's questions with respect to the M registration.  *See* [39-9] at 2.  In the "one fax, three letters, six phone conversations and seven voicemails" from the IRS, and according to the agency's notes from the Administrative Record, only one voicemail to Plaintiff made a vague reference to the revocation of "another registration."  ECF No. [52] at p.8; *see also* ECF Nos. [39-7] and [39-8].  The note about the voicemail read: "[c]alled [Plaintiff] since they have not respond[ed] to any email and or phone message. [IRS] left voice mail and explained that if they do not contact [IRS] back, [IRS] will deny[*sic*] the new application and revoke the one that they already have."  ECF No. [39-9] at 2.  That one voicemail message did not give Plaintiff notice that its UV registration was being called into question.

Here, had Plaintiff not filed for an M registration, the IRS would not have reviewed Plaintiff's UV registration at all, nor is there anything in the record to suggest that their UV registration had previously been improvidently granted or deficient in any way.  Nothing in the record suggests that Plaintiff's UV registration was being questioned for any deficiency.  Indeed, when Plaintiff reapplied for its registration—using the same documents and D-14 certificates as it has always used— it was again awarded the UV registration.  *See* ECF No. [66] at 7:2-19.  In short, the IRS' only reason for revoking the UV registration was that Plaintiff was not responding to questions regarding an entirely different process.  *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, (1983)

("[A]n agency rule would be arbitrary and capricious if the agency ... offered an explanation for its decision that runs counter to the evidence before the agency ....").  Put simply, the IRS threatened the revocation of and then actually revoked the UV registration because of Plaintiff's failure to respond to questions regarding its M application.  The cancellation had nothing to do with the requirements of the UV certification.

For these reasons, the Court finds that the revocation of Plaintiff's UV registration was arbitrary and capricious.

### B. Exemption Certificates Provided by Plaintiff Substantially Complied with Requirements.

Doubling down on its decision to deny Plaintiff its refund, Defendant argues that there is a separate reason to deny Plaintiff's refund claim as a matter of law—that Plaintiff did not maintain the relevant exemption certificates from their buyers under the regulations for both gasoline and diesel fuel, and that the certificates provided do not meet the requirements set forth in the relevant regulations.  *See* ECF No. [42] at p.15–16.  This, the Government argues, the Court may review *de novo. See id.*  In Plaintiff's Motion, and in its Response to the Government's Motion, Plaintiff argues that the certificates provided by Plaintiff substantially comply with the relevant Exemption Certificates, and, in the alternative, that the regulation requiring the Exemption Certificates is invalid for its failure to adhere to the Administrative Procedure Act's Notice and Comment Rulemaking.  *See* ECF No. [43] at 14–20; ECF No. [50] at 18–20.

According to the Treasury Regulations, a UV is required to maintain certificates that (i) are signed by the ultimate purchaser, (ii) include both the name and address of the UV and the ultimate purchaser, (iii) describe the what the gasoline is actually used for or what it will be actually used for, and (iv) contain a statement that "the ultimate purchaser understands that the ultimate purchaser and any other party may, for fraudulent use of the certificate, be subject under section 7201 to a fine of not more than $10,000, or imprisonment for not more than five years, or both, together with the costs of protection." *See* Treas. Reg. § 48.6416(b)(2)-3(b)(l)(ii). For diesel fuels, Section 48.6427-9(e)(2) of the Treasury Regulations require that an UV provide a certificate that includes:

> A statement that is signed under penalties of perjury by a person with authority to bind the buyer, is in substantially the same form as the model certificate provided in paragraph (e)(2)(ii) of this section, and contains all information necessary to complete such model certificate. A new certificate must be given if any information in the current certificate changes.

Treas. Reg. § 48.6427-9(e)(2). The same section also notes that the certificate expires "on the earlier of . . . (A) the date one year after the effective date of the certificate or (B) the date a new certificate is provided to the seller." *Id.*

The D-14 forms provided in connection with refund requests are a Consumer's Certificate of Exemption—a state certificate issued by the Florida Department of Revenue. *See* ECF Nos. [41-3], [41-4]. The Certificates include both the name and address of the ultimate purchaser and confirm that the entity is exempt from the payment of Florida sales and use taxes. Deposition testimony provided by Chas DeFelice, the representative of Pro Energy who was in charge of collecting the

20

relevant exemption certificates, confirms that the D-14 forms received are the forms provided by purchasers if and/or when Plaintiff wins a bid for the sale of gas or diesel fuels to tax exempt entities.  *See* C. DeFelice Dep., 89:12–93: 4, ECF No. [41-5]; *see also* C. Cruz Dep. 46:1-8, ECF No. [41-6].  DeFelice noted that these certificates are the only certificates provided by purchasers in Florida and that such certificates have their own expiry dates because they are provided at the time of an execution of the bid.  *See id.*

The Court recognizes that the D-14 forms lack the minutiae of the sample form provided in the diesel regulation and as described in the gasoline regulation.  *See* ECF No. [41-5] at 31.  Indeed, Plaintiff does not dispute this.  The D-14 forms that Plaintiff submitted for the Quarters at Issue are not signed by Plaintiff, do not include the purpose for which the fuel will be used and, in the case of diesel fuels, are not identical to the form proposed as a model certificate in the regulation.  *See* ECF Nos. [41-3], [41-4].  The question, then, is whether the D-14 forms provided substantially comply with the regulation.  This Court finds that they do.

The Eleventh Circuit has recognized the doctrine of substantial compliance as applied in similar tax requirements.  Indeed, although a taxpayer may have failed to meet literal requirements, the taxpayer substantially complies when the materials provided comply with the "specific requirements related to the 'essence' of the statutory and regulatory scheme.  *See Tipps v. Commissioner*, 74 T.C. 458 (1980) (finding that the partnerships substantially complied with the statute and regulations and that petitioners were entitled to the relevant deductions); *Columbia*

*Iron & Metal v. Commissioner*, 61 T.C. 5 (1973) ("[W]e are convinced that the petitioner has substantially complied with the requirements of both the statute and the regulation."); *Hewlett-Packard v. Commissioner*, 67 T.C. 736 (1977) (finding that the statement and material provided complied with the applicable regulation and was legally sufficient to comply with the applicable regulation); *see also J.J. Powell, Inc. v. United States*, 125 Fed. Cl. 73 (2016) ("although the government insists that the dates on these exemption certificates are invalid because they were not signed on the effective start date of the certificates, the court cannot find any regulatory provision that is violated by this practice. In sum, the court finds that Powell's certificates substantially complied with both IRC § 6416(a)(1) and Treas. Reg. § 48.6416(b)(2)–3(b)(1)(ii) so as to properly establish plaintiff's refund claims for gasoline excise taxes in this suit."). More specifically, a court should examine the regulation's "purpose, its relationship to other provisions, the terms of the underlying statute, and the consequences of failure to comply with the provision in question." *Hewlett-Packard Co. v. Commissioner of Internal* Revenue, 67 T.C. 736 (1977) ("We also think that, in view of the regulatory scheme, the consequences of imprecise compliance . . . petitioner's filing of the statement and schedule . . . substantially complied with the applicable regulation.").

Defendant argues that substantial compliance cannot be applied in this case because "verifying the tax-exempt nature of the sales is the very essence of the regulation's requirements," and that the certificates provided by Plaintiff cannot satisfy the rules set forth by the IRC regulations. ECF No. [48] at 18. Defendant also

22

argues that the regulatory requirements for the certificates are very clear, and that the period that such certificates are effective is critical to the IRS' ability to prevent fraud. *See id.* Lastly, Defendant argues that the opinions of the IRS Agents are irrelevant to the Court's decision under its *de novo* review of this issue. *See id.*

Defendant is correct in identifying the essence of the regulation's requirements as the ability to verify the tax-exempt nature of the sale. Even so, based on the Administrative Record, this Court fails to see how the D-14 forms that Plaintiff provided do not achieve that goal. Congress empowered the agency to provide tax refunds to taxpayers who sell fuel to tax exempt entities. The D-14 forms Plaintiff provided confirm that the entity purchasing the fuel are tax exempt entities, and the full transaction receipts attached thereto further specify the details of each transaction. *See, e.g.*, ECF Nos. [40-24], [40-25] (2016-2021 Exemption Certificates). Indeed, the IRS has before and since the Quarters at Issue, accepted the D-14 forms. As a result, the Court finds that the D-14 forms, together with Pro Energy's full package of filings for the tax refunds at issue here, are substantially compliant with the essential purpose of the IRC regulations.

Plaintiff—for the past *decade*—has bought and sold fuel to tax exempt clients throughout the state of Florida and received the relevant tax refunds for the relevant sales, and continued to do so between, and after the quarters at issue here. Indeed, Plaintiff has received those refunds while providing the IRS with the very same unsigned D-14 Forms deemed insufficient for the Quarters at Issue. When asked about his review of Plaintiff's tax return documents, IRS representative William

Terron testified that there were no issues with the documentation provided by Plaintiff. *See* W. Terron Dep., 62:15–24, ECF No. [53-5]. Terron confirmed from the documentation provided that "the sales that Pro Energy was making to various governmental entities in Florida[] were indeed tax exempt." *Id.* 62:15–24, ECF No. [53-5]. Even further, when asked specifically about Plaintiff's exemption certificates, Mr. Terron confirmed again that there was no issue with Pro Energy's documentation, confirming that there was never a need to do anything other. *Id.* 67:19–68:9, ECF No. [53-5]. The Court finds no reason to discredit the testimony of the agent tasked with reviewing Plaintiff's refund application.[7]

---

[7] In the alternative to the substantial compliance argument, Plaintiff's Motion challenges the validity of the Treasury Regulation requiring exemption certificates. *See* ECF No. [43] at 16–20. In its Response, the Government argues that challenges to the validity of this regulation are barred and otherwise fail on the merits. ECF No. [48] at 15. The Government also filed a Notice of Supplemental Authority on this issue, apprising the Court of a recent decision regarding challenges to the validity of certain tax regulations. *See* ECF No. [67]. Plaintiff argues that the case is factually distinct from the facts at hand, and distinguishes Plaintiff's position from the position of the taxpayer in that decision. *See generally*, ECF No. [69]. Given that the Court has found Plaintiff's Exemption Certificates substantially comply with the relevant regulation, it does not reach the issue whether the regulation is valid.

## V.  CONCLUSION

For the above reasons, it is hereby **ORDERED AND ADUDGED** that Plaintiff's Motion for Summary Judgment, ECF No. [43], is **GRANTED,** and Defendant's Motion for Summary Judgment, ECF No. [42], is **DENIED**.

Pursuant to Rule 58(a) of the Federal Rules of Civil Procedure, Final Judgment will be entered by separate order.

The Clerk is directed to **CLOSE** this case, and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Miami, Florida, this 10th day of April, 2026.

_____

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**